

## NUMBER 13-07-00363-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

FREDDIE RECORDS, INC.,
AND FREDDIE MARTINEZ, INDIVIDUALLY,
AND D/B/A FREDDIE RECORDS,
JOINTLY AND SEVERALLY,                                    Appellants,

v.

RAMON AYALA,                                             Appellee.

## On appeal from the 370th District Court of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Garza, and Vela
### Memorandum Opinion by Justice Yañez

This is an interlocutory appeal of an anti-suit injunction issued by a Hidalgo County

district court in favor of appellee, Ramon Ayala ("Ayala").[1]  By a single issue and several

sub-issues, appellants, Freddie Records, Inc. and Freddie Martinez, individually and d/b/a

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon 2008).

Freddie Records, jointly and severally ("Freddie"), challenge the anti-suit injunction. We affirm.

## I. Background[2]

Ayala is a recording artist, and Freddie is a record company. Pursuant to various agreements over the years, the parties have had a business relationship whereby Ayala records "master recordings" for Freddie, and Freddie converts those recordings into albums and compact discs for sale and distribution in the United States. In the underlying litigation, the parties dispute whether obligations have been met under a recording agreement dated January 4, 1995 ("the agreement").

Ayala contends he has delivered the required number of recordings to Freddie, but that he has not been paid certain royalties and income due under the agreement. On November 8, 2006, Ayala sued Freddie in the 92nd District Court in Hidalgo County ("the Hidalgo County suit"),[3] seeking a declaratory judgment that he has met his recording obligations under the agreement. Ayala later amended his petition, adding causes of action for breach of contract and breach of fiduciary duty.

On November 21, 2006, Freddie sued Ayala in County Court at Law Number 4 in Nueces County ("Nueces County I"),[4] alleging that Ayala breached the agreement by failing to record the required number of albums and record the albums in a timely manner. On

---

[2] Many of the background facts are taken from this Court's opinion in a related original proceeding. *See In re Ayala*, No. 13-07-140-CV, 2007 Tex. App. LEXIS 3319, at **1-5 (Tex. App.–Corpus Christi Apr. 27, 2007, orig. proceeding) (mem. op.).

[3] The Hidalgo County suit was styled *Ramon Ayala, Individually and d/b/a Los Bravos del Norte v. Freddie Records, Inc. and Freddie Martinez, Individually, and d/b/a Freddie Records, Jointly and Severally,* and was assigned trial court cause number C-2660-06-A in the 92nd District Court of Hidalgo County.

[4] The first Nueces County suit was assigned trial court cause number 06-62635-4 in Nueces County Court at Law Number 4. We note that this petition is not included in the record before us, but is described in *In re Ayala*, 2007 Tex. App. LEXIS 3319, at **2-3.

December 18, 2006, Ayala filed a plea in abatement in Nueces County I, based on an assertion that the Hidalgo County suit acquired dominant jurisdiction. After the Nueces County Court denied Ayala's plea, he filed a petition for writ of mandamus with this Court.[5] This Court stayed the proceedings in the Hidalgo County and Nueces County I suits during its consideration of Ayala's petition for writ of mandamus.[6]

On or about April 18, 2007 (during the stay and this Court's consideration of the petition for writ of mandamus), Freddie filed a second suit in Nueces County Court at Law Number 2, requesting injunctive relief ("Nueces County II").[7] In its petition, Freddie alleged that: (1) Ayala breached the agreement by failing to deliver the required number of albums under the agreement; and (2) Ayala had recorded sufficient "masters" to constitute a new album and planned to deliver them to Sony,[8] without first delivering them to Freddie, as required under the agreement. In requesting injunctive relief, Freddie alleged that "Ayala's threatened action to deliver the Masters to Sony and not to Freddie will cause [Freddie] irreparable harm." The Nueces County II court granted a temporary restraining order on April 19, 2007, and set the temporary injunction hearing for April 30, 2007.

On April 24, 2007, Ayala filed, in his then-pending original proceeding in this Court, an emergency motion to show cause why Freddie "should not be held in contempt of court, for stay of proceedings, for sanctions, and for expedited review." In the motion, Ayala

---

[5] See id. at *1.

[6] See id. at *4.

[7] The second Nueces County suit was styled *Freddie Martinez, Individually and Freddie Records, Inc. v. Ramon Ayala, Individually and d/b/a Los Bravos del Norte* and was assigned trial court cause number 07-60924-2 in Nueces County Court at Law No. 2.

[8] The agreement recognizes that Ayala has a contract "with Sony Record Company, its subsidiaries or related companies in Mexico."

alleged that by filing the Nueces County II suit, Freddie had engaged in "a bad faith attempt to circumvent this Court's [stay order] and nullify its effect."

On April 27, 2007, this Court found the Hidalgo County court had acquired dominant jurisdiction, conditionally granted Ayala's petition for writ of mandamus, and directed the County Court at Law Number 4 to abate Nueces County I.[9]  Without discussion or explanation, this Court granted Ayala expedited review of his emergency motion, but otherwise denied the relief he requested in that motion .

On April 30, 2007, in the Nueces County II suit, the Nueces County Court at Law Number 2 held the scheduled hearing on Freddie's requested temporary injunction. Counsel for Ayala did not appear at the hearing.[10]  At the hearing, Freddie presented the testimony of John Martinez, an employee of Freddie.  Martinez testified that:  (1) Ayala owed Freddie six recordings under the agreement; and (2) Freddie had learned of Ayala's plan to release a master recording to Sony, in violation of the agreement.  During the hearing, the trial court signed a temporary injunction, dated April 30, 2007, enjoining Ayala from delivering any new masters to Sony until they were first delivered to Freddie.

On May 8, 2007, in the Hidalgo County suit, Ayala filed his third amended petition, seeking:  (1) the dissolution of the temporary injunction in Nueces County II; and (2) an anti-suit injunction enjoining Freddie from pursuing the Nueces County I and Nueces County II suits and from filing additional suits against Ayala.  On May 22, 2007, the Hidalgo County court held a hearing on Ayala's request for an anti-suit injunction.  Both parties

---

[9] *See In re Ayala*, 2007 Tex. App. LEXIS 3319, at **16-19.

[10] Ayala later testified that he was not served with citation in the Nueces County II suit.

4

appeared and introduced documents into the record.[11]  Ayala was the only witness who presented testimony.  On May 23, 2007, the Hidalgo County court issued an anti-suit injunction.  The court stated that "[i]n order to protect [its] jurisdiction," it enjoined Freddie from:

> (1) filing or pursuing any motions, pleadings, or any other papers, other than an unconditional dismissal or abatement, in the First or Second Nueces County Court cases, or otherwise prosecuting these cases in any manner, including any enforcement of the Temporary Injunction in the Second Nueces County Court Case;
>
> (2) filing any original petitions, complaints or lawsuits against Ayala in any court, forum, or jurisdiction other than this Court, based on or stemming from the claims that are made or could have been made in the First and Second Nueces County Court Cases or this cause; and
>
> (3) taking any action to delay or prevent Ayala from fulfilling his contractual and legal obligations to Sony.

The court also made the following additional findings:

> Based on the Application, the Pleadings, the evidence, and the arguments of counsel[,] the Court finds and concludes that a) [Ayala] does not owe any additional albums to [Freddie] and has not refused to deliver any albums to [Freddie] under the Recording Agreement; b) [Ayala] was not and is not required to deliver albums to [Freddie] contemporaneously with albums delivered to Sony de Mexico, S.A. de C.V. ("Sony") for release outside the United States; c) [Freddie] waived any right to require that [Ayala] record his albums at [Freddie's] studio in Corpus Christi; d) [Freddie has] breached and violated the Recording Agreement between the parties; and e) [Ayala] has shown a strong and substantial likelihood that he will prevail on the merits. The Court also finds that Ayala has established the existence of very special circumstances and the potential for an irreparable miscarriage of justice to warrant an anti-suit injunction. [Freddie has] demonstrated their bad faith and total disregard for the lawful orders and jurisdiction of this Court and, if

---

[11] At the May 22, 2007 hearing, counsel for Freddie advised the trial court that they believed the hearing concerned a temporary restraining order, rather than a hearing on a temporary injunction, because they had not received notice of the Hidalgo County court's previously-issued TRO.  Freddie's counsel acknowledged that "there are several counsel of record in this matter and only one counsel of record was provided with notice of the TRO itself." Freddie's counsel requested a continuance, but following an off-the-record discussion (and without ruling on the request), the trial court proceeded with the temporary injunction hearing.

5

unrestrained, will:

1) continue their evasion and threats to this Court's jurisdiction by forum shopping;

2) continue the wrongful multiplication of proceedings with the intent to thwart this Court's dominant jurisdiction and the Court of Appeals' Mandamus Order, causing havoc and a waste of judicial and appellate resources;

3) continue to harass and force Ayala to the great personal and financial burden of having to defend himself against vexatious proceedings, and the resulting disruption of the judicial process, risking the loss of his right to proceed to trial in Hidalgo County;

4) continue to attempt to prevent Ayala from fulfilling his contractual and legal obligations; and

5) alter the status quo and cause a miscarriage of justice.

This appeal ensued. Freddie contends that the Hidalgo County court abused its discretion in issuing the anti-suit injunction. By six sub-issues, Freddie argues the trial court abused its discretion because: (1) the Hidalgo County and Nueces County II suits involve separate provisions of the agreement; (2) this Court had already rejected Ayala's request for injunctive relief; (3) Ayala presented no evidence of special circumstances required for an anti-suit injunction; (4) the trial court decided the ultimate issues in the case; (5) the injunction was too broad; and (6) it enjoined Freddie from interfering with Ayala's obligations to Sony, even though Sony is not a party and Ayala's contractual and legal obligations to Sony have not been established.

## II. Standard of Review and Applicable Law

Whether to grant or deny a temporary injunction is within the trial court's sound

discretion.[12]  A reviewing court should reverse an order granting injunctive relief only if the trial court abused its discretion.[13]  The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion.[14]  In reviewing the trial court's order, we are to draw inferences from the evidence in the manner most favorable to the trial court's ruling.[15]  Although a trial court does not abuse its discretion when it bases its decision on conflicting evidence, that evidence must reasonably support the trial court's decision.[16]  On interlocutory appeal of an order granting a temporary injunction, we do not reach the merits of the dispute, but determine only whether the record supports the trial court's exercise of discretion.[17]

Texas courts have the power, through anti-suit injunctions, to prevent persons from proceeding with litigation filed in other state courts.[18]  However, this equitable power is to be exercised sparingly, and only in very special circumstances.[19]  The party seeking the injunction has the burden to show that a clear equity demands the injunction.[20]  The

[12] *Yarto v. Gilliland*, 287 S.W.3d 83, 89 (Tex. App.–Corpus Christi 2009, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).

[13] *Id.*

[14] *Id.*

[15] *London Mkt. Insurers v. Am. Home Assur. Co.*, 95 S.W.3d 702, 705 (Tex. App.–Corpus Christi 2003, no pet.).

[16] *Harbor Perfusion, Inc. v. Floyd*, 45 S.W.3d 713, 717 (Tex. App.–Corpus Christi 2001, no pet.).

[17] *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 552 (Tex. App.–Dallas 2009, no pet.).

[18] *Gannon v. Payne*, 706 S.W.2d 304, 305 (Tex. 1986); *London Mkt.*, 95 S.W.3d at 706.

[19] *London Mkt.*, 95 S.W.3d at 706.

[20] *Id.*

applicant must demonstrate the potential for an irreparable miscarriage of justice in order to obtain the anti-suit injunction.[21] When a suit is filed in a court of competent jurisdiction, that court is entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to a suit subsequently filed in another court of this state.[22]

An anti-suit injunction is appropriate in four instances: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation.[23] The circumstances of each situation must be carefully examined to determine whether the injunction is necessary to prevent an irreparable miscarriage of justice.[24]

The majority rule in Texas is that in addition to meeting the requirements necessary to obtain an anti-suit injunction, the traditional prerequisites to injunctive relief must be met by a party seeking an anti-suit injunction.[25]

### III. Discussion

### A. Separate Issues

In its first sub-issue, Freddie contends that the Hidalgo County court abused its discretion in granting the anti-suit injunction because the Hidalgo County suit and the

---

[21] *Id.*

[22] *Gannon*, 706 S.W.2d at 305-06.

[23] *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex. 2005) (citing *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996)).

[24] *Gannon*, 706 S.W.2d at 307.

[25] *See Yarto*, 287 S.W.3d at 88 n.8 (collecting cases). In *Yarto*, this Court expressly declined to decide this issue, but rather, assumed *arguendo* that the traditional prerequisites are applicable to an anti-suit injunction. *See id.* Traditionally, an applicant for a temporary injunction must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *See id.* at 88. We note that Freddie does not challenge the anti-suit injunction on grounds related to the traditional prerequisites. Thus, we do not address the issue.

8

Nueces County II suit "do not concern related issues." According to Freddie, the Hidalgo County suit is a declaratory judgment and breach of contract action to determine whether Ayala has met his obligation to deliver fourteen albums to Freddie as required under the agreement. In contrast, the Nueces County II suit concerns Freddie's ownership, control, and right to distribute the master recordings prior to any other company.

We are unpersuaded by Freddie's argument. Paragraph I of the agreement provides that "[t]he term of this agreement shall be for a period of seven (7) years in which Ayala will deliver to Freddie fourteen (14) albums." The agreement begins on the date of execution and "continue[s] until delivery of the fourteenth (14th) and final album under this agreement." Thus, the agreement itself ceases to operate upon Ayala's delivery of the fourteenth album to Freddie. Accordingly, if—as Ayala claims—he has met his obligations to deliver the required number of albums under the agreement, Freddie's claims that Ayala breached a separate provision of the agreement fail as a matter of law because the agreement is no longer operative. At the May 22, 2007 temporary injunction hearing, the trial court noted that if:

> they [Ayala] in fact prove at trial that there have been over 14 masters turned over to Freddie under this contract, the contract actually, you and I differ on one thing. Well, maybe we don't, you just didn't discuss it that way. The provisions requiring him [Ayala] to turn over masters to Freddie has ceased.

We agree with the trial court, and reject Freddie's argument that the provision of the agreement at issue in the Nueces County II suit "does not address, either directly or indirectly, any of the issues addressed in the Hidalgo County Suit." We overrule Freddie's first sub-issue.

9

## B. Effect of *In re Ayala*

By its second sub-issue, Freddie contends that by declining to grant Ayala the relief he requested in his April 24, 2007 "Emergency Motion to Show Cause," filed in his then-pending original proceeding (*In re Ayala*), this Court "already decided" that Ayala was not entitled to any relief enjoining the Nueces County II suit. In Ayala's emergency motion, he argued that Freddie, by filing the Nueces County II suit, had violated this Court's stay order (entered in the mandamus proceeding) and was attempting to evade this Court's jurisdiction. In the emergency motion's prayer for relief, Ayala requested, among other relief, that Freddie "be ordered to immediately cease and desist from the prosecution of the Second Nueces County Case, dismiss it, dissolve the temporary restraining order, and cancel the hearing on the request for a temporary injunction." As noted, this Court, without explanation, declined to grant any of the relief requested in the emergency motion except the request for expedited review.

We reject Freddie's argument that this Court's failure to grant Ayala his requested relief in the mandamus proceeding is somehow "the law of the case." Freddie's counsel made the same argument to the Hidalgo County court at the temporary injunction hearing, characterizing this Court's ruling in *In re Ayala* as follows:

> And the Court of Appeals from Corpus Christi said two things: Number one, Case No. 2 should be abated, but No. 2, we are not going to do a doggone thing to No. 3. We are not going to stop it. There is a TRO in place. We are not going to overturn that. We are not going to sanction Freddie Records for getting it. And we are going to allow the imminent temporary injunction hearing which was scheduled for two days later, we are going to allow that to go forward.
>
> So this very issue before Your Honor has been ruled upon by the Corpus Christi Court of Appeals. They said that Case No. 1 is dominant; Case No. 2 will be abated; and it is proper for Case No. 3, with these new facts and circumstances and this need for extraordinary relief—.

10

The trial court correctly noted that this Court's opinion "doesn't say why it was denied." The trial court also noted:

> I'm not sure I would have disagreed with the Thirteenth Court. The way you [Ayala] pled your request for relief to the Thirteenth Court, you are basically asking them [Freddie] to be held in contempt for violation of the stay. But they look at those stays specifically. And I don't think that they [Freddie] were stayed from filing another lawsuit. They were stayed from proceeding in the lawsuit that existed. That's probably why you were denied.

We also note that at the April 30, 2007 temporary injunction hearing in the Nueces County II suit, Freddie blatantly misrepresented this Court's opinion in *In re Ayala* to the trial court. Freddie's counsel told the Nueces County II trial court:

> The Court of Appeals ruled that this Court [Nueces County II] should go forward with the temporary injunction hearing today. So, I can give the Court a copy of that opinion, but the Court has ruled that this hearing is appropriate. . . . It also does conditionally grant a writ of Mandamus on the Plea in Abatement in the other matter but specifically takes up the matter of today's hearing and tells the Court to go forward.
>
> . . . .
>
> But, interestingly, along with those rulings [the Thirteenth Court] said this case, case number three [Nueces County II] should go forward. . . . All of that information, though, was before the Court of Appeals who instead of staying the third suit or issuing any sort of slap on our wrist for filing a lawsuit, a third suit, instead said, "Go forward. Proceed," and I think it's because the Court of Appeals understood we had no other relief available.

As is abundantly clear from the record, this Court made no such rulings or statements. We overrule Freddie's second sub-issue.

## C. Special Circumstances

By its third sub-issue, Freddie argues that "[n]o evidence for any of the four special circumstances required for the issuance of an anti-suit injunction exists in this case." Freddie argues that there is no threat to the Hidalgo County court's jurisdiction because "the two cases [Hidalgo County case and Nueces County II]

11

seek adjudication on separate and independent issues and events." We have already addressed this argument in Freddie's first sub-issue, and found it unpersuasive.

At the Hidalgo County injunction hearing, Ayala's counsel addressed the findings and orders contained in the temporary injunction issued in Nueces County II:

> Well, and Judge, you've nailed the issue because if you view the temporary injunction that they obtained ex parte, it also says, it has a finding that Mr. Ayala breached the contract, so you're exactly right. It's not just the fact that there's two cases. It's one case in particular, but they're asking the court and are getting contrary findings that will have an impact on this case. And in the final analysis, Your Honor, the only thing we're asking is let them take their best shot. That's fine. But it needs to be here. If they want to do whatever they need to do, they need to do it here in one case here in Hidalgo County.

As noted, the temporary injunction issued by the Nueces County II court enjoined Ayala from delivering any new masters to Sony until they were first delivered to Freddie. As the Hidalgo County court noted, however, if Ayala's obligations have been met under the agreement, "then [Freddie's] lawsuit dealing with those masters being delivered to Sony and they should have been delivered to us first and all that, all that is moot. It's gone. It's done." The Hidalgo County court also stated that it should decide the issue of whether a valid agreement remains between the parties because it is the court of dominant jurisdiction and "that's precisely why these rules are set up."

At the May 22, 2007 hearing, Ayala testified, among other things, that: (1) he has delivered to Freddie all albums due under the agreement; (2) he was not served with citation to appear in the Nueces County II suit; and (3) that he delivered an album to Sony in mid-March 2007 and "[had] one more to finish up with [Sony]." Ayala also introduced the following documentary evidence: (1) this Court's opinion in *In re Ayala*; (2) Freddie's

12

petition and application for injunctive relief in Nueces County II; (3) the temporary restraining order issued in Nueces County II; (4) a November 16, 2006 "demand letter" from Ayala's counsel to Freddie; (5) a February 20, 2007 letter from Freddie's counsel to Ayala's counsel regarding the denial of Ayala's plea in abatement in Nueces County I; (6) a copy of the agreement; and (7) a copy of the transcript of the January 12, 2007 plea-in-abatement hearing in Nueces County I.

At the time of the May 22, 2007 hearing in the Hidalgo County court, the court had before it: (1) this Court's opinion establishing the Hidalgo County court as the court of dominant jurisdiction over Nueces County I; (2) evidence that the trial court in Nueces County I had failed to sign an order of abatement; and (3) a temporary injunction in Nueces County II, which enjoined Ayala from meeting his contractual obligations to Sony. We conclude that as the court of dominant jurisdiction, the Hidalgo County court had the power to protect its jurisdiction over the parties and the issues before it by enjoining Freddie from pursuing its suits in Nueces County I and Nueces County II, filing additional suits based on the same claims, and from interfering with Ayala's obligations to Sony.[26] We overrule Freddie's third sub-issue.

### D. Impermissibly Broad

By its fourth sub-issue,[27] Freddie contends that the language of the temporary injunction is impermissibly broad because it (1) prevents Freddie from bringing any action

---

[26] *See Henry v. McMichael (In re Henry)*, 274 S.W.3d 185, 193 (Tex. App.–Houston [1st Dist.] 2008, orig. proceeding, pet. denied) (op. on reh'g); *London Mkt.*, 95 S.W.3d at 708.

[27] Although listed separately in the "Issues Presented" section of its brief, Freddie addresses its fourth and fifth sub-issues together in the "Argument" section of its brief. Freddie's sixth sub-issue regarding Sony was mentioned only briefly within the discussion of its fourth sub-issue and was not separately addressed. Thus, we conclude that Freddie's sixth sub-issue regarding Sony is waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

13

against Sony; and (2) prohibits "any claims between Freddie and Ayala—despite having no relationship with the current dispute" insofar as the prohibition includes claims that "could have been made" in the Nueces County I and Nueces County II suits—a category which includes "permissive and wholly unrelated claims." We are unpersuaded by Freddie's argument. The injunction enjoined Freddie from pursuing the Nueces County I and Nueces County II suits and from filing any new suits "based on or stemming from the claims that are made or could have been made" in those suits or the Hidalgo County suit. We note that at the end of the Hidalgo County temporary injunction hearing, the following exchange occurred:

| [Court]: | I'm going to rule whether or not this case should go first and that case should be abated, period. That's what you're asking for. It's basically an abatement issue but it's in the form of an injunction enjoining them from doing it. |
|---|---|
| [Freddie's counsel]: | And we would only note that this junction [sic] here is much broader than mere request that you order us to abate case number three and we would submit that that [sic] extra is—would be—would be inappropriate regardless of the court's findings. |
| [Ayala's counsel]: | Oh, it is, Judge, I've learned my lesson from the court of appeals, you know. We need to keep these people from filing—if you just abate they've got to file another one. I mean, we just need to put an end to this. |

We conclude that the temporary injunction is not impermissibly broad.

Within this sub-issue, Freddie also contends the trial court exceeded its authority by "deciding the ultimate issues for trial." We recognize that "[a]t the hearing for a temporary writ of injunction, the applicant is not required to establish that she will prevail on final trial; the only question before the trial court is whether the applicant is entitled to

14

preservation of the status quo pending trial on the merits."[28]  A ruling on temporary injunctive relief may not be used to obtain an advance ruling on the merits.[29]  Here, however, Ayala did not receive all the relief requested in his "Third Amended Petition for Declaratory Judgment, for Injunction and Damages."  For example, in his petition, Ayala alleged Freddie owed him income and royalties, failed to provide him an accounting of income and royalties, and claimed exemplary damages.  Thus, the Hidalgo Court did not grant relief identical to that requested in Ayala's third amended petition.[30]

We also note that at the temporary injunction hearing, Ayala's counsel told the court:

You've also had the benefit of Mr. Ayala's testimony in this case with regard to the elements.  I don't know that when we're dealing with an anti-suit injunction it's necessary to prove the elements of your traditional injunction, but we did so anyway.  The only evidence you've got before you today is Mr. Ayala's position that he has not been accounted for in terms of all the records and royalties owed, that he believes that he has met all of his obligations under the contract alternative.  What he's asking for is for the court to say, you owe whatever it is that he owes, so he's not running away from his obligations.  He's said that he will abide by whatever the court's decision is, even though he feels and we feel confident that we've delivered all the albums necessary.

Now they've claimed side letters and all this other kind of stuff.  Of course you don't have any evidence of that because they didn't put on any proof, you know, by choice, so the only evidence you have then is Mr. Ayala's testimony with regard to having fulfilled his obligations under the contract and Freddie not having fulfilled his.

. . . .

Judge, this is a case that cries out for an anti-suit injunction under

---

[28] *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).

[29] *See Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex. 1981).

[30] *See, e.g., R & R Res. Corp. v. Echelon Oil & Gas, L.L.C.*, No. 03-05-479-CV, 2006 Tex. App. LEXIS 326, at **30-31 (Tex. App.–Austin 2006, no pet.) (finding ruling granting temporary injunctive relief did not consist of advance ruling on the merits where parties seeking injunctive relief did not receive all relief requested in motion for temporary injunction or petition); *Tri-Star Petroleum Co. v. Tipperary Corp.*, 103 S.W.3d 583, 593 (Tex. App.–El Paso 2003, pet. denied) (same).

these circumstances. I mean, no one—no litigant, no person should have to go through what Mr. Ayala has gone through just to get his day in court, which is why we're asking that the court protect its jurisdiction so that we can have that day in court and present our evidence.

We conclude that the trial court did not decide the case on the merits without a full trial. We overrule Freddie's fourth and fifth sub-issues.

## IV. Conclusion

Drawing all legitimate inferences from the evidence in the light most favorable to the trial court's ruling, we conclude there was "some basis" on which the trial court could have held as it did; thus, the trial court did not abuse its discretion.[31] Having overruled Freddie's issue and sub-issues, we affirm the trial court's judgment.

LINDA REYNA YAÑEZ
Justice

Memorandum Opinion delivered and
filed this the 30th day of September, 2009.

---

[31] *See London Mkt.*, 95 S.W.3d at 708.